**United States District Court**
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

IMPLICIT NETWORKS, INC.,

           Plaintiff,

  v.

F5 NETWORKS, INC.,

           Defendant.

_____/

IMPLICIT NETWORKS, INC.,

           Plaintiff,

  v.

JUNIPER NETWORKS, INC.

           Defendant

_____/

No. C 10-03365 SI; No. C 10-4234 SI

**ORDER DENYING MOTIONS FOR
ATTORNEYS' FEES AND COSTS**

      Currently before the Court are motions by defendants F5 Network Inc. and Juniper Networks, Inc. for an award of attorneys fees and costs under 35 U.S.C. § 285.  Pursuant to Civil Local Rule 7-1(b), the Court finds these matters suitable for disposition without oral argument and therefore VACATES the hearings currently scheduled for May 10, 2013.  Having considered the parties' papers and the record, the Court hereby DENIES defendants' motion for attorneys' fees and costs, for the reasons set forth below.

**United States District Court**
For the Northern District of California

**BACKGROUND**

Plaintiff filed Case No. 10-3365 against F5 Networks on July 30, 2010 and Case No. 10-4234 against Juniper Networks, Inc., on September 20, 2010.  The cases were determined to be related and assigned to this Court.  In these related cases, plaintiff accused defendants' products of infringing two patents: U.S. Patent No. 6,629,163, issued September 30, 2003 and as it emerged after reexamination on June 22, 2010 ("'163 Patent"), and U.S. Patent No. 7,711,857 ("'857 Patent"), issued May 4, 2010 as a continuation application from '163.

On February 29, 2012, the Court issued its claim construction Order.  On March 13, 2013, the Court granted defendants' motions for summary judgment. February 29, 2013 Order [Docket No. 173].  In that Order the Court concluded that Implicit's patents were invalid over prior art.  *Id*. at 15.  In addition, the Court found that F5's product did not infringe at least two critical claims in plaintiff's patents.  *Id*., at 26-29.  As to Juniper, the Court found that Implicit had failed to meets its burden to establish a material issue of fact essential to its infringement case by failing to provide expert testimony or other evidence regarding the actual operation of the accused Juniper products.  *Id*., at 22.  Both F5 and Juniper now move for an award of attorneys' fees and costs under 35 U.S.C. § 285.

**LEGAL STANDARD**

Section 285 of the Patent Act provides that "[t]he court in exceptional cases may award reasonable attorney fees to the prevailing party."  35 U.S.C. § 285.  "When deciding whether to award attorneys' fees under § 285, a district court engages in a two-step inquiry.  First, the court must determine whether the prevailing party has proved by clear and convincing evidence that the case is exceptional . . . .  If the district court finds that the case is exceptional, it must then determine whether an award of attorney fees is justified."  *Marctec, LLC v. Johnson & Johnson*, 664 F.3d 907, 915-16 (Fed. Cir. 2012).  "A case may be deemed exceptional under § 285 where there has been . . . misconduct during litigation, vexatious or unjustified litigation, conduct that violates the Federal Rule of Civil Procedure 11, or like infractions."  *Id*. at 916 (internal citation omitted).  Taken together, these factors must demonstrate that the claims filed were both "objectively baseless" and "brought in subjective bad faith."  *Marctec*, 664 F.3d at 916.

**United States District Court**
For the Northern District of California

**DISCUSSION**

**1.     F5's Motion**

F5 argues that Implicit's litigation was objectively baseless and subjectively in bad faith because Implicit's claim construction and infringement theory was contradicted by the intrinsic record from the PTO proceedings, where Implicit explicitly disclaimed the right to use wholly predefined processing sequences.  Motion at 13-18.  F5 notes that it engaged Implicit early on in an attempt to head off the litigation, showing Implicit how F5 exclusively uses wholly predefined configuration sequences.  Nonetheless, according to F5, Implicit continued to litigate, seeking in claim construction and in summary judgment to recapture the disclaimed ability to cover wholly predefined sequences.  As such, F5 contends that Implicit's whole litigation – but especially its continued litigation after the Court rejected Implicit's attempts in claim construction to recapture wholly predefined sequences – was baseless and in bad faith.  F5 also contends that Implicit's bad faith is shown by Implicit's unreasonable settlement demands, which were forty or fifty times higher than the alleged nuisance settlements Implicit accepted from other defendants in related litigation.

Implicit responds that it litigated in good faith and that its theories, while rejected by the Court, had objective merit.  Implicit argues that its belief in the objective merit of the case is shown by its extensive pre-litigation investigation, which included an in-house technical analysis that was shared with outside technical consultants, as well as contemporaneous notes litigation counsel took and passed along to his client.  Declaration of Spencer Hosie [Docket No. 183], ¶¶ 7-10, 13.  Implicit also notes that its summary judgment theory – that the claims were infringed by the F5 products' creation of a stateful message-specific path post-first packet – was supported by its expert, a computer science professor from the University of Texas at Austin and the Rule 30(b)(6) depositions taken by Implicit.  *Id*.,¶ 28; Opposition to F5's motion at 16.  As to the settlement demands, Implicit asserts they were reasonable in light of Implicit's recent mediation award against Microsoft.  Hosie Decl., ¶ 4.

On this record, the Court finds that F5 has not shown by clear and convincing evidence that Implicit's litigation was objectively baseless and subjectively in bad faith.  Implicit has submitted evidence that it undertook a serious pre-litigation investigation. *See Computer Docking Station Corp. v. Dell, Inc*., 519 F.3d 1366, 1380 (Fed. Cir. 2008) (not error to deny fees under 35 U.S.C. § 285  based

1   on the evidence of pre-filing activities in the record).  Implicit also vigorously attempted to convince

2   the Court – both at claim construction and again at summary judgment – that the claims covered the

3   instantiation of a stateful data processing sequence practiced by F5's products.  That the Court rejected

4   Implicit's attempts does not mean Implicit's litigation was baseless, in bad faith, or constituted litigation

5   misconduct.  Likewise the Court cannot find, under the clear and convincing standard, that Implicit's

6   approach to settlement warrants an exceptional case finding.  Implicit approached settlement in light of

7   its recent award in arbitration against Microsoft and, as the case continued, in light of Implicit additional

8   litigation expenses.  Hosie Decl., ¶¶ 6, 12, 28.

9

10  **2.      Juniper's Motion**

11          Juniper argues that it should be awarded its fees after May 2012, because by that time the Court

12  had issued a claim construction adverse to Implicit, Implicit's expert had still failed to identify code-

13  based evidence of infringement, and two examiners at the PTO had independently determined that

14  Implicit's claims were anticipated by prior art.  *See* Juniper's Motion *generally*.  Implicit's continuation

15  with the litigation after this time, Juniper asserts, was baseless and in bad faith.   Implicit's litigation

16  positions were also baseless, Juniper contends, because Implicit unreasonably relied on inconsistent

17  claim construction positions and then took positions on summary judgment that were unsupported and

18  even contradicted by its experts.  Juniper also argues that Implicit's conduct was baseless because

19  Implicit attempted to conceal the fact that its code analysis expert – Pavel Treskunov – relied on the

20  wrong source code and Implicit attempted to hide that fact from Juniper and the Court.  *See* Juniper

21  Motion at 13-17.  In the alternative, Juniper contends these same facts support a finding that Implicit

22  engaged in litigation misconduct as a separate ground to find this case "exceptional" for awarding

23  attorneys fees.  *See* Juniper Motion at 22-23;Juniper Reply at 11-15.

24          As an initial matter, as to the invalidity findings by the PTO, although the Court found them

25  persuasive in reaching its own independent conclusion as to invalidity, those conclusions were not the

26  final word on validity from the PTO and cannot provide a basis for finding this case exceptional under

27  section 285.  Looking to the record in this case, the Court finds that Implicit did undertake a serious pre-

28  filing investigation.  *See* Declaration of Spencer Hosie in Opposition to Juniper's Motion,  ¶¶ 10, 12-13.

**United States District Court**
For the Northern District of California

**United States District Court**
For the Northern District of California

1   The decision of Implicit to analyze only the source code for the multi-services products was not baseless

2   or litigation misconduct, even if in retrospect (as a result of the dropping of that product line from the

3   case at a late date, after revenue information was released by Juniper) it turned out to not have been the

4   best choice.   Similarly, Implicit's argument that the multi-service products were a proxy for the

5   operation of the still-accused products was not baseless or litigation misconduct, although the Court

6   found that Implicit's evidence to support the proxy theory had serious gaps and was insufficient as a

7   matter of law.   The fact that on summary judgment Implicit was forced to rely primarily on attorney

8   argument and citations to Juniper's documents and Rule 30(b)(6) witnesses in support of its argument

9   – as the utility of its experts' testimony was diminished by the dropping of the multi-services products

10  and the admittedly shifting focus of the case – was not baseless or in bad faith.   Finally, the Court finds

11  that Implicit did not *hide* the fact that its code expert analyzed only the multi-services product and not

12  the still-accused products.   Although Implicit's expert, Dr. Nettles, used portions of the code analysis

13  in his report without clearly noting that the code was from the multi-services products, that fact was not

14  hidden. Instead, as the Court ultimately found, the deficiency in Dr. Nettles' report was his failure to

15  directly address and show why reliance on the multi-services product code could suffice to show

16  infringement of the still-accused products.   In sum, Juniper has not shown by clear and convincing

17  evidence that Implicit's litigation was baseless, in bad faith, or constituted litigation misconduct

18  sufficient to find this case "exceptional" under section 285.

19

20

21

22

23

24

25

26

27

28

**United States District Court**
For the Northern District of California

1

**CONCLUSION**

2          For the foregoing reasons and for good cause shown, the Court DENIES defendants' motions

3    for attorneys fees and costs. [Case No. 10-3365 Docket No. 177; Case No. 10-4234 Docket No. 211].[1]

4

5          **IT IS SO ORDERED.**

6

7    Dated: May 8, 2013

8                                                                              SUSAN ILLSTON
                                                                              United States District Judge
9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27          [1]  Also before the Court is the parties' stipulation to file under seal portions of Exhibits 1, 7 and 8
     to the Hefazi Reply Declaration.  Case No. 10-4234, Docket No. 235.  That motion is GRANTED and
28   Juniper is directed to e-file under seal within five (5) days of the date of this Order sealed versions of
     those exhibits.  Juniper shall also file in the public docket redacted versions, having redacted only the
     confidential source code and third-party mediation information.

6